**EVERETT/CHARLES CONTACT PRODUCTS, INC., Plaintiff,**

v.

**GENTEC, S.A.R.L. and Richard J. Gassner, Defendants.**

**Civ. A. No. 88–0086–L.**

United States District Court, D. Rhode Island.

Aug. 11, 1988.

Steven E. Snow, Patridge, Snow & Hahn, Providence, R.I., for plaintiff.

John F. Dolan and Mark P. Dolan, Rice Dolan & Kershaw, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter presently is before the Court on defendant Gentec's motion to dismiss for failure to join an indispensible party under Fed.R.Civ.P. 19(b) and under the doctrine of *forum non conveniens.* The motion presents the Court with two issues to decide: (1) whether defendant Gassner, whose presence defeats the complete diversity of citizenship requirement of 28 U.S.C. § 1332(a), is an indispensible party to the remainder of the suit against defendant Gentec; and (2) whether it would be more appropriate for the courts of France to resolve this litigation. For the reasons discussed below, this Court concludes that defendant Gassner is not an indispensible party and that this Court provides a proper forum for the resolution of this controversy.

### Background

According to the complaint, the facts are as follows. Plaintiff, Everett/Charles Contact Products, Inc. ("Everett/Charles") is a Delaware corporation. Its principal place of business is in Pomona, California and it is qualified to do business in Rhode Island. On June 27, 1986 Everett/Charles acquired O.B. Test Group, Inc., a Rhode Island corporation with its principal place of business in Warwick, Rhode Island. O.B. manufactures and sells spring-loaded test probes for distribution throughout the United States, Western Europe and Asia. Effective December 31, 1987, O.B. Test Group, Inc. was merged into Everett/Charles and since that time, the Rhode Island operation has been doing business under the name "Ostby–Barton Test Probes, a division of Everett/Charles Contact Products, Inc." (Hereinafter Ostby–Barton Test Probes Division and O.B. Test Group are referred to interchangeably as "O.B.")

Defendant Gentec, S.A.R.L. ("Gentec") is a corporation formed under the laws of France, with its principal place of business in Paris, France. Defendant Richard Gassner is the managing director and controlling shareholder of Gentec. Although he remains a citizen of the United States, Gassner has resided in Belgium since 1962.

Since 1980 Gentec has been the exclusive distributor of O.B. products in France. Initially, O.B. and Gentec conducted business under a mutual understanding whereby O.B. granted Gentec an exclusive distributorship in France and Gentec promised to use its best efforts to promote O.B.'s products. Gentec further promised not to sell or distribute competing manufacturers' product lines. According to the complaint, O.B. treated Gentec as a strategic business partner and continually rendered critical pricing trade secret and proprietory technical information to Gentec. On or about June 27, 1985, O.B. and Gentec, through its managing director Gassner, entered into a written agreement formalizing Gentec's exclusive right to promote, sell and distribute O.B.'s products in France. The written agreement consisted of an International Distributor's Agreement, an International Pricing Policy, and a Sales Agreement. According to the complaint, the June 1985 Agreement was negotiated in the English

language in Rhode Island and was accepted and executed in Rhode Island. Goods sold to Gentec were to be shipped F.O.B. Warwick, Rhode Island. Paragraph III–H of the International Distributor's Agreement provided for a two-year term with an automatic two-year extension if neither party cancelled the agreement within sixty days of the end of the first term.

One year later on June 27, 1986 Everett/Charles acquired O.B. All of O.B.'s international distributors were informed of the acquisition and advised that new distributorship contracts were to be drafted and executed. In April, 1987, O.B. sent superceding agreements to its international distributors including Gentec; all signed and returned the new agreements except for Gentec and another company affiliated with Gassner. Gentec never communicated with plaintiff or O.B. concerning the April 1987 contract, but plaintiff assumed that Gentec had accepted the superceding agreement.

In 1987 Gassner formed Gentec International, a Belgian corporation, and began soliciting customers for spring-loaded test probes in Western Europe. These test probes were not manufactured by O.B. and were marketed under the competing trade name of "Gentec." In October, 1987, O.B. learned that Gentec had provided samples and prices of "Gentec" test probes to O.B. customers in the United Kingdom and France. After Gassner rebuffed O.B.'s inquiries concerning Gentec's sale of competing test-probes, O.B. informed Gentec by telefax that it was going to terminate Gentec as its distributor in France. On October 14, 1987 Gassner and Gentec informed O.B. that under the automatic two-year renewal period provided for by the June, 1985 agreement, O.B. could not terminate Gentec until June 27, 1989. By letter dated October 26, 1987, O.B. formally terminated Gentec as O.B.'s exclusive French distributor. Gentec then filed suit against O.B. in the Commerce Court of Bobigny in Paris, France for breach of contract.

On February 8, 1988, plaintiff filed the present action in this Court. The five-count complaint seeks: (1) a declaratory judgment as to the effect of O.B.'s termination of Gentec; (2) damages for breach of the noncompetition clause in the June, 1985 agreement; (3) rescission of the agreement; (4) money due for goods sold to Gentec between July 22, 1987 and November 5, 1987; and (5) an injunction and damages for breach of the fiduciary duty not to disclose plaintiff's trade secrets. The fifth count seeks relief against Gassner, Gentec and Gentec's agents and employees. The other counts pray for relief only against Gentec.

On March 28, 1988, both defendants moved to dismiss under 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure. First, defendants claimed that this Court did not have diversity jurisdiction under § 1332 because Gassner, although a citizen of the United States, was not a citizen of any particular state. Defendants argued that although Gentec is a foreign corporation amenable to the alienage jurisdiction provided by Section 1332, Gassner's presence as an additional defendant ran afoul of the requirement of complete diversity of citizenship. *See Dadzie, Etc. v. Leslie,* 550 F.Supp. 77, 79 (E.D.Pa.1982) (presence of United States citizen/alien as defendant defeats diversity of jurisdiction although plaintiff is diverse from corporate defendant). Second, defendants requested that this Court dismiss the complaint under the doctrine of *forum non conveniens* contending that it would be more appropriate to have this dispute resolved in the French courts.

After hearing oral arguments on May 4, 1988, this Court ordered additional discovery on the question of Gassner's citizenship. At a further hearing held on May 25, 1988, plaintiff conceded that Gassner was indeed a United States citizen domiciled in Belgium and not a citizen of any particular state. To preserve this Court's diversity jurisdiction over Gentec, plaintiff offered to dismiss the suit against Gassner, with prejudice. At this point, counsel for defendants argued that Gassner was an indispensible party and that, if Gassner were dropped as a defendant, this Court would have to dismiss the action against Gentec as well. Thus, in effect, Gentec converted

its motion to dismiss for lack of subject matter jurisdiction into a motion to dismiss for failure to join an indispensible party under Rule 19(b). It also renewed its arguments in support of the application of the doctrine of *forum non conveniens.* This Court took these questions under advisement. The matter is now in order for decision.

### Indispensible Party

■ Under Fed.R.Civ.P. 21, a district court has authority to dismiss a non-diverse party from an action. The Court, therefore, accepts plaintiff's offer to dismiss Gassner with prejudice. Now, under Fed.R.Civ.P. 19(b), the Court must determine whether Gassner, the non-diverse party, is indispensible to this action. The ultimate test is to determine whether it would be preferable in equity and good conscience to dismiss the whole action rather than proceed in the absence of the non-diverse party. Rule 19(b) sets forth the following criteria for the Court to consider in making this decision:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions of the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Under the criteria of Rule 19(b), Gassner clearly is not an indispensible party to this action. First, any judgment rendered in Gassner's absence would be prejudicial neither to Gassner nor to the other parties. Plaintiff has agreed to dismiss Gassner with prejudice and proceed against Gentec alone. Consequently, plaintiff's interest cannot be jeopardized. Gentec's interest is unaffected by Gassner's dismissal from the action. Since no right of contribution exists between Gentec and Gassner, Gentec is not subjected to any additional or contingent liability due to Gassner's absence. Gassner will remain a key witness in the litigation, regardless of whether or not he is a party. This involvement will also protect Gassner's interest. He will be able to protect his interest in the litigation through his position as managing director and controlling shareholder of Gentec. The fact that Gassner and Gentec were represented by the same counsel also indicates that Gassner's interest will be protected even though he will not continue as a formal party to the action. Furthermore, Gassner need not fear a suit in another court, since the plaintiff has agreed that the dismissal be with prejudice.

The second criterion of Rule 19(b) requires the Court to consider the shaping of relief to lessen or avoid prejudice. Since the Court has determined that no prejudice will result from Gassner's dismissal, there is no need to consider the shaping of relief, and the second factor, therefore, has no application.

Third, a judgment rendered in the absence of Gassner will not be inadequate. In the complaint, plaintiff seeks relief against Gassner in only one count, and that count prays primarily for injunctive relief. If the Court grants an injunction against Gentec, that injunction will also bind Gassner in his position as a managing agent of Gentec. Therefore, any judgment rendered in the absence of Gassner will be adequate and completely resolve this dispute.

Under the fourth criterion of Rule 19(b) the Court must consider whether plaintiff would have an alternative forum if the action is dismissed. In the case at bar, it is obvious that plaintiff could file an action in state court if this action were dismissed for nonjoinder. However, that such is the case is not dispositive of this matter. Application of the other criteria indicates that dismissal would not be required in these circumstances, and therefore, the fact that an alternative forum exists elsewhere is, by itself, not sufficient to require dismissal of this entire action. In summary, the Court is satisfied that Gassner is not an indispensible party and thus, Gentec's motion to dismiss under Fed.R.Civ.P. 19(b) is denied.

### Forum Non Conveniens

Finally, defendant Gentec moves to dismiss the case under the doctrine of *forum non conveniens*. It argues that it would be more appropriate for the courts of France to hear this case. This Court has the inherent power to refuse jurisdiction where the interests of justice require that the suit be brought in a foreign country. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In *Gulf Oil Corp. v. Gilbert* and its companion case *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) the Supreme Court set forth the considerations that a district court must observe in determining whether to dismiss an action for *forum non conveniens*. In those decisions, the Court stated that a plaintiff's choice of forum should rarely be disturbed. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981). "However, when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Id.*

To guide the discretion of the trial court, the Court provided a list of "private interest factors" affecting the convenience of the litigants, and a list of "public interest factors" affecting the convenience of the forum court. The factors pertaining to the private interests of the litigants include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 241 n. 6, 102 S.Ct. at 258 n. 6 (citing *Gilbert, supra* 330 U.S. at 508, 67 S.Ct. at 843). The public factors bearing on the question include the administrative difficulties flowing from court congestion; the

"local interest in having localized controversies decided at home;" the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 241, 102 S.Ct. at 258 (citing *Gilbert, supra* 330 U.S. at 509, 67 S.Ct. at 843).

At the outset of any *forum non conveniens* inquiry, the Court must determine whether there is an alternative forum in which the litigation can proceed. *Piper Aircraft v. Reyno, supra* at 254 n. 22, 102 S.Ct. at 265 n. 22. "In rare circumstances ... the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Id.* That the alternative forum is in a foreign country generally is not a bar to dismissal. *See, e.g., Piper Aircraft v. Reyno, supra; Overseas National Airways, Inc. v. Cargolux Airlines Int'l, S.A.*, 712 F.2d 11 (2d Cir.1983). "Nonetheless, where the adequacy of the alternative forum is 'not established,' it 'cannot be presumed,' and a motion to dismiss for *forum non conveniens* must be denied." *Hatzlachh Supply, Inc. v. Tradewind Airways Ltd.*, 659 F.Supp. 112, 114 (S.D.N.Y.1987) (quoting *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico S.A.*, 528 F.Supp. 1337, 1342–43 (S.D.N.Y.1982) *aff'd*, 727 F.2d 274 (2d Cir.1984)). In the present case, defendant argues that the fact that a suit with identical issues is pending in France is "incontrovertible evidence that an alternative forum in fact exists for the resolution of the claim." Plaintiff responds that it "frankly has no idea whether or not the French court in question is an 'adequate and available alternative forum' for the issues raised in these proceedings...." While the arguments of the parties really do not assist the Court in determining whether the French courts would provide an adequate alternative forum for plaintiff's claims, this Court need not resolve this issue. For the reasons discussed below, the balancing of the private and

public interests outlined in *Gilbert* does not require that the Court dismiss this action under the doctrine of *forum non conveniens.*

### Private Interests

■ The balancing of the private interests involved here points to Rhode Island as a fitting forum for this litigation. At the center of this dispute is a contract between a Rhode Island manufacturer and foreign distributor. The contract is written in English and the parties signed and executed it in Rhode Island. The contract calls for goods to be sold and delivered to Gentec F.O.B. Warwick, Rhode Island. Plaintiff claims that all of its witnesses and documents relating to proof of damages are in Rhode Island. Plaintiff acknowledges that its other witnesses may be in Europe although it does not elaborate on this point. Defendant replies that the majority of its witnesses who will provide testimony on the breach of contract and disclosure of trade secrets issues are in France and Europe. Neither party has indicated who these witnesses may be or the nature of their testimony. Courts have required at times that a party moving to dismiss a case for the convenience of witnesses specify the names and addresses of witnesses it expects to call. *Ocean Shelf Trading, Inc. v. Flota Mercante Grancolombiana S.A.,* 638 F.Supp. 249, 251 n. 4 (S.D.N.Y.1986); *G.B.C. Nigeria (Ltd.) v. M.V. Sophia First,* 588 F.Supp. 76, 79 (S.D. N.Y.1984). In addition, neither party has discussed the feasibility of obtaining testimony by way of deposition or letters rogatory. *See Hatzlachh Supply, Inc. v. Tradewind Airways Ltd., supra* at 116–117. It may well be that both parties will not have compulsory process available for some witnesses. In any event, it is evident that both parties will suffer some inconvenience and expense in bringing willing and unwilling witnesses to either forum. Defendant has not established that it would be less inconvenient for plaintiff to bring its witnesses and proof to France than for defendant to bring its witnesses and proof to Rhode Island.

Indeed there are two considerations that indicate that Rhode Island is the more convenient forum. First, because Gassner (Gentec's managing agent responsible for the contractual relationship between the parties) is an American national fluent in English, it will be easier for defendant to litigate in Rhode Island than it would be for plaintiff to litigate in France. Second, because the contractual documents involved here were written in English, they would have to be translated into French should this case be heard in France. Since a large part of this action involves interpretation of the contract, it would be preferable to review the language of the contract in its original form. Also, although the costs of translation would not alone constitute sufficient grounds for dismissal, *Karvelis v. Constellation Lines SA,* 608 F.Supp. 966, 972 (S.D.N.Y.1985), *aff'd,* 806 F.2d 49 (2d Cir.1986), they are a factor in deciding whether to dismiss. *Schertenleib v. Traum,* 589 F.2d 1156, 1165 (2d Cir. 1978). In short, the private interest factors, although not totally one-sided, balance in favor of trial in Rhode Island.

### Public Factors

■ The public interest factors also favor trial in Rhode Island. Clearly Rhode Island has an interest in having this dispute resolved locally. The contract at issue here was signed and executed in Rhode Island. That agreement governs the sale and distribution of Rhode Island goods in foreign countries. Moreover, plaintiff has alleged that trade secrets of a Rhode Island business were improperly disclosed to foreign competitors. Certainly, this community has a sufficient relationship to this litigation so that required jury duty by Rhode Island citizens would not be an unwarranted burden. It is also to be noted that plaintiff desires a jury trial of factual issues which, of course, is not available in France.

In addition, Rhode Island law will govern the case. In determining the proper law to apply, this Court must apply Rhode Island's choice of law rules. *See Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4–5, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975)

(per curiam); *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Mason v. Southern New England Conference Ass'n of Seventh–Day Adventists,* 696 F.2d 135, 136 (1st Cir.1982). In *SW Industries, Inc. v. Aetna Casualty & Surety Co.,* 653 F.Supp. 631, 639 (D.R.I.1987), this Court (per Judge Pettine) recently observed:

> Although recent case law has rendered matters ambiguous, Rhode Island appears to follow the rule that the law of the place of contracting governs all questions of contract interpretation. *See, Bartholomew v. Insurance Co. of North America,* 502 F.Supp. 246, 250 (D.R.I. 1980), *aff'd sub nom., Bartholomew v. Appalachian Insurance Co.,* 655 F.2d 27 (1st Cir.1981) ("In Rhode Island, the law of the place where the insurance contract was made governs its construction."); *Coderre v. Travelers Insurance Co.,* 48 R.I. 152, 155, 136 A. 305 (1927); *Owens v. Hagenbeck–Wallace Shows Co.,* 58 R.I. 162, 171–72, 192 A. 158, 163 (1937) (declining to follow *dictum* in *Hunt v. Jones,* 12 R.I. 265 (1879), which had suggested that matters of performance are to be interpreted by the law of the place of performance); *but see Albany Insurance Co. v. Wisniewski,* 579 F.Supp. 1004, 1013 (D.R.I.1984) (interpreting dictum from *A.C. Beals Co. v. Rhode Island Hospital,* 110 R.I. 275, 292 A.2d 865 (1972), as abandoning the *lex loci contractu* rule); *Roy v. Star Chopper Co.,* 442 F.Supp. 1010, 1015 (D.R.I.1977), aff'd 584 F.2d 1124 (1st Cir.1978) *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979) (same); *A.C. Beals Co. v. Rhode Island Hospital,* 110 R.I. 275, 292 A.2d 865 (1972) (dictum suggesting that the interest-weighing choice of law rule might apply in contract interpretation); *id.* at 287, 292 A.2d at 871, n. 5 ("On the record, we need not, and do not, decide whether the doctrine [of interest-weighing] applies to contract cases.").

In the present case, all five counts of plaintiff's complaint raise questions of contract interpretation. Thus, Rhode Island law will apply. Even under the interest-weighing choice of law rule for torts set forth in *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917, 923 (R.I.1968), Rhode Island law will apply to the trade secret allegations outlined in Count V. Rhode Island clearly has a significant interest in the wrongful disclosure of Rhode Island trade secrets in foreign countries. As the Supreme Court ruled in *Gulf Oil v. Gilbert, supra* 330 U.S. at 509, 67 S.Ct. at 843, "There is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

Finally, no administrative difficulties prevent the Court from hearing this case. This Court's caseload is current and resolution of this matter will proceed expeditiously. In short, both the public and private interest factors point to Rhode Island as the proper forum for this litigation and therefore, defendant's motion to dismiss on the basis of *forum non conveniens* is denied.

## *Conclusion*

Because defendant Gassner is a United States citizen domiciled in Belgium, this Court dismisses the action against him with prejudice, pursuant to plaintiff's invitation, in order to preserve the requirement of complete diversity between the parties under 28 U.S.C. § 1332. Gentec's motion to dismiss for failure to join an indispensible party and for *forum non conveniens* is denied. This action will proceed in this forum against Gentec.

IT IS SO ORDERED.