**AMERICAN SAIL TRAINING ASSOCIATION**

v.

**Mark Shirley Portal LITCHFIELD and Goods Export, Ltd.**

Civ. A. No. 87–0436 L.

United States District Court, D. Rhode Island.

Jan. 25, 1989.

A. Lauriston Parks, Lisa Mariorenzi–Musco, Hanson, Curran, Parks and Whitman, Providence, R.I., for plaintiff.

Bradford Gorham, Providence, R.I., Brian P. Flanagan, Flanagan & Hunter, P.C., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

In this breach of contract case, plaintiff, American Sail Training Association (ASTA), a Rhode Island corporation, seeks indemnification from defendants Mark Shirley Portal Litchfield (Litchfield), an English citizen, and Goods Export, Ltd. (Goods Export), an English corporation, for plaintiff's expenses arising out of litigation relating to the sinking of the sailing vessel S/V MARQUES in June 1984 during a tall ships race from Bermuda to Halifax, Nova Scotia. Defendants have moved to dismiss the complaint for want of in personam jurisdiction, subject matter jurisdiction, and failure to state a claim upon which relief can be granted. Defendants also have moved for dismissal on grounds of improper venue and *forum non conveniens.*

## BACKGROUND

The three-masted, 117 foot barque S/V MARQUES was owned by defendant Litchfield and his partner, Robin Patrick Cecil–Wright, who is not a party to this action. Litchfield and Cecil–Wright were the sole principals in the China Clipper Society, an unincorporated holding company that maintained title to the refitted sixty-seven year old vessel. Litchfield described the China Clipper Society as a "trading extension" of Goods Export, and plaintiff characterizes Goods Export as the beneficial owner of the S/V MARQUES.

ASTA was founded in 1973 and is a non-profit corporation, organized and existing under the laws of Rhode Island. Its principal interests are sail training, the sponsorship of tall ships racing events, and the securing of sail training cruises for its students. Through the offices of ASTA, Litchfield entered the S/V MARQUES in the June 2, 1984 Bermuda to Halifax, Nova Scotia "Cutty Sark International Tall Ships Race" (Tall Ships Race). Among the ship's crew were ASTA sailing trainees, including residents of Rhode Island and Massachusetts. When the vessel sank in a storm in early June, 1984, some eighty miles northeast of Bermuda, several of the ASTA trainees were among the nineteen aboard who lost their lives. Representatives of some of the decedents have instituted a number of legal actions in several forums against the owners of the S/V MARQUES, its insurer, ASTA, and the promoters of the Tall Ships Race. Plaintiff ASTA seeks indemnification in this three-count complaint against Litchfield and Goods Export.

The first count of the complaint alleges breach of contract by defendants for failure to include ASTA under the insurance coverage in effect for the S/V MARQUES. The second count alleges breach of con-

tract by defendants for violation of their express agreement "to provide disciplined, orderly, clean and safe ships."

The third count, although containing some negligence allegations, appears to claim that defendants were in breach of a contractual warranty of seaworthiness.

### In Personam Jurisdiction

Before ruling on the jurisdictional questions presented, this Court finds it necessary to invoke its broad discretion to consider extra-pleading material in order to garner the pertinent facts. *See Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989). Review of the plaintiff's complaint, accepting the allegations therein as true, *Fudge v. Penthouse Int'l Ltd.*, 840 F.2d 1012, 1014 (1st Cir.) *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988), *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987), together with consideration of the affidavits submitted by the plaintiff provides the following factual basis for the Court's determination of whether the defendants are subject to this forum's jurisdiction.

Litchfield made two trips to Newport, Rhode Island for the purpose of promoting the S/V MARQUES and her sister vessel the S/V INCA. The first trip was made in "February–March 1983" to establish a promotional office for China Clipper Society in Newport. The second visit was made "in early 1984" to discuss arrangements with ASTA concerning the Tall Ships Race. In April 1983, China Clipper Society opened a promotional office in Newport and staffed it with a representative who operated the facility until April of 1984. On April 16 of that year, China Clipper Society and ASTA entered into a letter agreement concerning the June race. This agreement was the culmination of numerous telephone, telex, and letter communications from Litchfield in England to ASTA in Rhode Island and regular exchanges between the Society representative in Newport and the ASTA office located nearby.

During China Clipper's period of operation in Rhode Island, its representative, Jeanne Sanschagrin (Sanschagrin), corresponded on stationery bearing the organization's Newport address. She provided ASTA with promotional and informational literature pertaining to the S/V MARQUES and S/V INCA, and she placed advertisements soliciting business for the Society's ships. Sanschagrin obtained a local post office box for China Clipper Society, and she and Litchfield opened a bank account at the Rhode Island Hospital Trust National Bank for the organization's accounts.

These efforts led to a contractual arrangement between China Clipper Society and ASTA whereby ASTA actively solicited sailing trainees for the Bermuda-to-Halifax voyage of the S/V MARQUES. Pursuant to this agreement, the ASTA staff placed advertisements in sailing magazines, distributed literature to various college campuses, and provided information to potential trainees at its Newport business office. Trainee applications, registrations, and payments for participation in the 1984 Tall Ships Race were processed by ASTA personnel in Newport. ASTA retained the sum of $50 per trainee for administrative expenses and remitted $600 per trainee to China Clipper Society. ASTA also placed two of its sailing counselors aboard the S/V MARQUES as training supervisors and to serve as liaison between the ship captain and the trainees.

The letter agreement of April 16, 1984, which Litchfield executed in England on behalf of China Clipper Society also imposed obligations on the owners of the S/V MARQUES. These contractual provisions were succinctly summarized by Judge Selya in *Heath v. American Sail Training Association*, 644 F.Supp. 1459 (D.R.I.1986).

> As a condition precedent to an association with the ASTA program, the owners of the Marques had to offer assurances that certain ASTA requirements would be fulfilled.... For their part, the shipowners agreed to abide by numerous requirements which ASTA imposed. These included comprehensive ASTA maintenance and sailing instructions, the presence aboard ship of an (unpaid) ASTA counselor or counselors to work with the trainees for the length of the voyage, the

provision of liability insurance in stipulated minimum limits, and the like. In short, CCS [China Clipper Society] accepted the conditions precedent to participation in the ASTA program. *Id.* at 1463.

In addition to these assurances to ASTA, Litchfield personally represented in China Clipper Society's application for entry in the 1984 Tall Ships Race that the S/V MARQUES was seaworthy and in compliance with British nautical safety standards. He maintained continual correspondence with ASTA by telephone, telex, and letter beginning in early 1983, extending through the negotiation of the April letter agreement, and ending some time after the June 3 sinking of the S/V MARQUES. Litchfield also represented that Sanschagrin was merely a "promotions officer" who lacked authority to enter into contracts on behalf of the Society. Litchfield personally and expressly retained such authority over the activities of that organization.

Litchfield claims that his relationship with China Clipper Society and Goods Export is complex. China Clipper Society apparently became a trading company for Goods Export in 1982. Although the assets of Goods Export in the United Kingdom were frozen in 1982, it apparently still maintains an office in Great Britain. As of May 21, 1987, Litchfield represented himself as Director of this British corporation.

Discussion now turns to the jurisdictional standards applicable to this controversy. The Court begins its analysis by determining whether process was served upon the defendants in compliance with Rhode Island's long-arm statute, R.I.Gen.Laws § 9–5–33 (1985), which provides in part:

> Every foreign corporation ... that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations ... amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States.

■ Determination of this issue requires a two-stage inquiry. First, are the requirements of the long-arm statute of the state in which the district court is located satisfied? Second, do the requirements of the state long-arm statute comport with the strictures of the due process clause of the Fourteenth Amendment? *Petroleum Service Holdings v. Mobil Exploration and Producing Services, Inc.,* 680 F.Supp. 492, 494 (D.R.I.1988).

With regard to the first question, Rhode Island's Supreme Court has held that R.I. Gen.Laws § 9–5–33 "extends up to the constitutional limitation." *Conn. v. ITT Aetna Finance Co.,* 105 R.I. 397, 402, 252 A.2d 184, 186 (1969). The Court's inquiry must therefore focus on the controlling due process standards, which were recently summarized in *Petroleum Service Holdings.*

> The United States Supreme Court has established a three part test in determining whether a state's long-arm statute violates the due process clause. First, one must determine whether the jurisdiction is specific or general. Then, depending on the type of jurisdiction that is exercised, one must examine the nature of the defendant's contacts with the forum state. Lastly, if the specific jurisdiction of the court is invoked in accordance with the due process clause, one must still inquire whether it is unreasonable for the Court to exercise personal jurisdiction over the defendant. 680 F.Supp. at 495.

Defendants argue that Litchfield's temporary ties to Rhode Island do not constitute the type of continuous and systematic contact with the forum state that gives rise to general jurisdiction as it is defined in *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Based on the papers presented in this case, the Court agrees with this position. Therefore this case must be viewed and considered as a specific jurisdiction case.

In *Helicopteros,* the Supreme Court stated that a federal district court exercises specific jurisdiction over a defendant in a suit "arising out of or related to the defendants' contacts with the forum." 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8.

Defendants contend that specific jurisdiction here is defeated because Litchfield executed the April 16 letter agreement with ASTA in England, and his presence in Rhode Island was limited to two brief visits. Defendants further argue that Sanschagrin's activities in Newport were confined to promoting China Clipper Society during her one-year tenure as Litchfield's representative in Rhode Island.

■ The April 16 letter agreement clearly arose out of Litchfield's meetings with ASTA in Newport and the continuing correspondence he maintained with that Rhode Island corporation. The fact that he signed the agreement in England does not defeat jurisdiction in Rhode Island. *Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808 (R.I.1985). The general rule that a contract is deemed made at the place where acceptance of the offer took place, *Good Will Home Association v. Drayton*, 108 R.I. 277, 274 A.2d 750, 752 (1971), does not vitiate jurisdiction when the foreign party purposefully avails itself of the privileges, benefits, and protections of the forum state's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

It was in Newport, Rhode Island where Litchfield solicited ASTA, negotiated the terms of the letter agreement, promoted his sailing ships, and maintained a business office. He entered the S/V MARQUES in the Tall Ships Race through a Rhode Island corporation, opened a local bank account, leased Newport office space, and established a Rhode Island business address for China Clipper Society. Furthermore, Litchfield's employee, Sanschagrin, promoted his sailing vessels in Newport for twelve months under his supervision and direction.

Although the April 16 letter agreement that finalized the arrangement between China Clipper Society and ASTA was accepted by Litchfield in England, it was to be performed in large part here in Rhode Island. Therefore, Litchfield and his representative availed themselves of the laws of this forum. In short, this suit arises out of and is related to Litchfield's contacts with Rhode Island. In addition, the cooperative nature of the arrangement between China Clipper Society and ASTA, the presence in Newport of Sanschagrin, Litchfield's business meetings and activities in Rhode Island, and the continual communications between Litchfield and ASTA indicate that it is reasonable to hale Litchfield, as a partner in the Society and the owner of the S/V MARQUES, into federal court in this forum. *See Dupont Tire Service Center, Inc. v. N. Stonington Auto–Truck Plaza, Inc.*, 659 F.Supp. 861, 863–4 (D.R.I.1987).

■ In sum, Litchfield's activities in Rhode Island constitute sufficient minimum contacts to establish specific in personam jurisdiction in this state. Service of process was made in compliance with Fed. R.Civ.P. 4(e), R.I.Gen.Laws § 9–5–33, and the Hague Convention, and therefore Litchfield's motion to dismiss for lack of in personam jurisdiction is denied.

■ The Court cannot, however, exercise in personam jurisdiction over Goods Export based on the facts presented. Plaintiff alleges that China Clipper Society, which was co-owned by Litchfield, was a trading extension of Goods Export, a British corporation in which Litchfield had an ownership interest at times relevant to this action. Plaintiff fails, however, to tie Goods Export to Rhode Island, to the S/V MARQUES, or to the April 16 letter agreement between China Clipper and ASTA. There are no allegations that Goods Export ever conducted business in Rhode Island or that it owned or operated the S/V MARQUES during the period pertinent to this suit, nor is there any indication that Goods Export was a party to the letter agreement. For these reasons, that defendant's motion to dismiss the complaint is granted pursuant to Fed.R.Civ.P. 12(b)(2).

### Alternate Grounds for Dismissal

Defendant Litchfield contends that this Court may not exercise its admiralty and maritime jurisdiction under 28 U.S.C. § 1333 over ASTA's indemnification claims because the letter agreement bears no rela-

tion to navigation and commerce. He characterizes plaintiff's action as a "garden variety contract indemnity claim[ ]," and describes the letter agreement as "preliminary to a maritime adventure." Litchfield, thus argues that the absence of subject matter jurisdiction should result in dismissal on this ground alone or, alternatively, on the basis of improper venue.

■ Review of the contract at issue leads to but one conclusion regarding subject matter jurisdiction. This agreement, which concerns the operation of the S/V MARQUES in compliance with the sailing and safety regulations of ASTA, was maritime in nature. Such contracts fall squarely within the admiralty jurisdiction of this Court. *Luvi Trucking, Inc. v. Sea–Land Service, Inc.*, 650 F.2d 371, 373 (1st Cir. 1981). Accordingly, Litchfield's 12(b)(1) motion for dismissal for lack of subject matter jurisdiction is denied. Furthermore, since in personam jurisdiction over Litchfield in this admiralty dispute has been established, the question of venue is merged with the personal jurisdiction inquiry, *see generally,* 1 *Moore's Federal Practice,* § 0.144 [13.–1] (2d ed.1986), and venue is appropriate. Therefore, Litchfield's 12(b)(3) motion claiming improper venue is denied as well.

■ The Court now turns to Litchfield's 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Litchfield's motion is directed to Count III of Plaintiff's Complaint which alleges "negligent, careless and/or reckless conduct including, but not limited, to breach of warranty of seaworthiness of S/V MARQUES." Litchfield claims that admiralty law provides no duty or warranty of seaworthiness that runs from the owners of the S/V MARQUES to ASTA. This assertion fails to address plaintiff's essential allegation which is that there was an express warranty of seaworthiness that was incorporated by reference into the letter agreement executed by both parties. Accepting the basic facts underlying plaintiff's claim as true, Litchfield's 12(b)(6) motion must be denied.

*Forum Non Conveniens*

■ Litchfield finally moves to dismiss on grounds of *forum non conveniens.* This is a doctrine designed to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Trans–Asiatic Oil Ltd. v. Apex Oil Co.,* 743 F.2d 956, 959 (1st Cir.1984). Under this doctrine, a district court has the inherent power to refuse jurisdiction where the interests of justice require that the suit be brought in a foreign country. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

In *Gulf Oil Corp. v. Gilbert* and its companion case *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Supreme Court clearly set forth a list of private and public interest factors that should be considered in making a *forum non conveniens* determination. More recently, the Supreme Court reaffirmed the Gilbert test and discussed a plaintiff's choice of forum in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1987). In this decision, the Court stated that a plaintiff's choice of forum should rarely be disturbed, and it outlined factors for consideration in ruling on *forum non conveniens* motions.

The factors pertaining to the private interests of the litigants include[ ] the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508 [67 S.Ct. at 843]. The public factors bearing on the question include[ ] the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the un-

fairness of burdening citizens in an unrelated forum with jury duty. *Id.,* at 509 [67 S.Ct. at 843].

454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

The Court also held that:

[W]hen trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case. 454 U.S. at 241, 102 S.Ct. at 258 (citing *Koster,* 330 U.S. at 524, 67 S.Ct. at 832).

■ Litchfield argues that witnesses essential to defense of this suit are located in Great Britain. He also states that because the incident at issue occurred on the high seas, the public interest of adjudicating this action in Rhode Island is minimal. And, he adds that acceptance of the letter agreement in Great Britain may invoke a conflict between the laws of Rhode Island and Great Britain.

In *Everett/Charles Contact Products, Inc. v. Gentec,* 692 F.Supp. 83, 88 (D.R.I. 1988) this Court observed that both parties in an action between a Rhode Island plaintiff and a foreign defendant "suffer some inconvenience and expense in bringing willing and unwilling witnesses to either forum." It was further noted that testimony of witnesses may be obtained by way of deposition or letters rogatory, thereby minimizing the inconvenience suffered by a geographically disadvantaged party. *Id.* These alternatives are available to Litchfield, whose defense of this suit is neither oppressive nor vexatious with regard to the production of witness testimony.

The Court also determines that there exists a substantial relationship between this controversy and Rhode Island. Plaintiff is a Rhode Island corporation that performed its contractual obligations to Litchfield in Newport. Plaintiff seeks indemnity for suits filed and litigated in the United States by United States citizens who entered the Tall Ships Race through ASTA's Newport business office. Furthermore, this case arises out of a letter agreement actively

negotiated in Rhode Island that involved more than one year of promotional activity by the defendant in this state. These connections between the contract at issue and Rhode Island support the public's interest in litigating this matter locally. Although this Court may have to resolve conflicts involving contract law principles, this factor alone cannot justify dismissal, particularly when it is unknown whether this case can be properly adjudicated in Great Britain. Absent a showing that an adequate alternative forum is available to these litigants, 692 F.Supp. at 87, this Court will not disturb plaintiff's decision to bring this action in Rhode Island.

Finally, no administrative difficulties prevent the Court from hearing this dispute. This Court's caseload is current and resolution of this matter will proceed expeditiously. In short, both the private and public interest factors indicate that Rhode Island is the appropriate forum for this litigation and therefore, Litchfield's motion to dismiss on the ground of *forum non conveniens* is denied.

### CONCLUSION

Defendant Litchfield's motions to dismiss on the bases of Fed.R.Civ.P. 12(b)(1), (2), (3), (5) and (6) and *forum non conveniens* are denied. Defendant Goods Export's motion to dismiss under Fed.R.Civ.P. 12(b)(2) is granted.

IT IS SO ORDERED.