**ITEL CONTAINERS INTERNATIONAL CORPORATION, et al., Plaintiffs,**

v.

**ATLANTTRAFIK EXPRESS SERVICE, LTD., et al., Defendants.**

**No. 86 Civ. 1313 (RLC).**

United States District Court, S.D. New York.

May 4, 1987.

Burlingham Underwood & Lord, New York City, for plaintiff Itel Containers In-

tern., Corp.; Robert J. Zapf, Alfred E. Yudes, Jr., of counsel.

Wilson & Minasi, New York City, for plaintiffs Textainer, Inc. and Cross County Leasing Ltd.; Michael D. Wilson, of counsel.

O'Melveny & Myers, New York City, for plaintiff Flexi-Van Leasing, Inc. Citicorp Center, Andrew J. Frackman, of counsel.

Carter, Ledyard & Milburn, New York City, for defendant Sea Containers Australia Ltd.; Lawrence F. Carnevale, James Gadsden, of counsel.

ROBERT L. CARTER, Senior District Judge.

These consolidated actions arise out of the default of defendant Atlanttrafik Express Services, Ltd. ("AES, Ltd.") on certain lease agreements. Plaintiffs Cross County Leasing Ltd. ("Cross County"), Itel Containers International Corporation ("Itel"), Flexi-Van Leasing, Inc. ("Flexi-Van") and Textainer Incorporated ("Textainer") assert that defendant Sea Containers Australia Ltd. ("SCAL") was a joint venturer in the operation of AES, Ltd., and have asserted claims against SCAL to recover on the leases. SCAL argues that its actions have not brought it within the jurisdiction of this court, and moves to dismiss pursuant to Rule 12(b)(2), F.R.Civ.P., or in the alternative for summary judgment pursuant to Rule 56, F.R.Civ.P.[1]

BACKGROUND

Plaintiffs are lessors of marine equipment, such as cargo containers, which are used by shipping companies to transport cargo. The plaintiffs individually entered into various lease arrangements with AES, Ltd, a British shipping line. AES, Ltd. had no employees. Its work was done by, and it operated out of, the offices of a wholly-owned American subsidiary, Atlanttrafik Express Services, Inc. ("AES, Inc."). *See* Uggla Deposition at 162, reproduced in

Yudes Affidavit, Exhibit G. AES, Inc. is located in New York, *id.*, which is where plaintiffs entered into the leases at issue. Yudes Affidavit, ¶ 6. It is undisputed that AES, Ltd. failed to fulfill its obligations under these leases, and that the company has filed for liquidation in Great Britain.

Plaintiffs originally brought suit on the leases against AES, Ltd. On October 30, 1986, the court allowed plaintiffs to amend their complaints to assert claims against five additional defendants, including SCAL. Those defendants were alleged to be "joint adventurers or joint venturers in the financing, operation, management, control and profits or losses of the enterprise for the carriage of cargoes by sea undertaken and carried out under the name of AES Ltd." *See, e.g.,* Itel Second Amended Verified In Rem Complaint, ¶ 9. Plaintiffs allege that as a joint venturer in AES, Ltd., SCAL was doing business in New York, or transacted business here, and is subject to the in personam jurisdiction of this court.

SCAL resists jurisdiction on the ground that it is a corporation organized and existing under the laws of Australia with its offices and principal place of business in Sydney, Australia. Carnevale Affidavit, ¶ 7. SCAL is one of a number of leasing agents of defendant Sea Containers America, Inc., which is a subsidiary of defendant Sea Containers Ltd. It arranges leases between Sea Containers Ltd. and companies that do business in Australia, and it repairs containers in Australia. By affidavit of Company Secretary Robert Joseph Alagna, SCAL swears that it maintains no offices in New York, has no property or bank accounts here, and has no agents or representatives here. It further swears that SCAL has never entered into any business transaction in New York. It denies that it entered into any joint venture with AES, Ltd. Alagna Affidavit, ¶¶ 2–7.

---

**1.** "[A] motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(2), rather than a motion for summary judgment, Fed.R.Civ.P. 56, is the more appropriate vehicle for contesting personal jurisdiction." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 n. 5 (2d Cir.1983). There is no question that the motion would reach an identical resolution regardless of which procedural vehicle the court employed.

Plaintiffs' allegations concerning the joint venture center around A.O. Rasmussen, the Managing Director of SCAL. In discovery thus far, plaintiffs have learned that Rasmussen was one of four members who sat on the AES, Ltd. "Steering Committee." This committee, they allege, functioned like a board of directors. Deposition testimony given by Claes Uggla, a committee member and AES, Ltd. president, reveals that the committee's function was "to discuss and lay down policy for the line; when it came to schedules, what areas to cover, major agency changes, *anything that was of material importance.*" Uggla Deposition at 166, *reproduced in* Yudes Affidavit, Exhibit G (emphasis added). Included in the committee's jurisdiction was AES, Ltd.'s budget. *Id.* at 186. In addition, the minutes of a committee meeting held in Australia in November of 1985 confirm that the committee made decisions regarding AES, Ltd.'s employment decisions, strategic planning, and finances, public relations and even more particular issues such as employee Christmas bonuses. Yudes Affidavit, Exhibit A.

Plaintiffs allege that Rasmussen sat on the committee in his capacity as Managing Director of SCAL, and held no formal position with AES, Ltd. To support this contention, they point to the minutes of the November, 1985 meeting, which lists Rasmussen as representing "SC Sydney," *id.,* a designation plaintiffs contend is an abbreviation for SCAL. Memorandum in Opposition at 4. Plaintiffs argue that SCAL's control of AES, Ltd. through Rasmussen is sufficient to sustain jurisdiction over SCAL. Alternatively, they ask that SCAL be directed to respond to interrogatories and other discovery requests. Those requests, they say, would allow them to gain greater information concerning SCAL's re-

lationship to AES, Ltd. and the leases at issue.

DISCUSSION

■ The parties correctly assume that personal jurisdiction over a defendant in a diversity action brought in this court is determined with reference to New York law. *See Arrowsmith v. United Press International Co.,* 320 F.2d 219, 223 (2d Cir. 1963) (en banc). Here plaintiffs allege that SCAL's participation in the AES, Ltd. joint venture is sufficient to establish that it was "doing business" in New York under New York's general jurisdiction statute, CPLR § 301, or alternatively, that it "transacted business" here and is subject to jurisdiction under New York's long-arm statute. CPLR § 302(a)(1). At this stage, where the court bases its decision on the pleadings and affidavits, the plaintiffs need only establish a *prima facie* case of jurisdiction, and those papers are read in the light most favorable to the plaintiffs. *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir.1986).[2] Eventually, either at trial or at a pre-trial evidentiary hearing, plaintiffs must prove jurisdiction by a preponderance of the evidence. *Id.*

Under CPLR § 302(a)(1),[3] jurisdiction may be obtained over a nondomiciliary corporation who in person or through an agent "transacts any business within the state...." *Id.* As interpreted by the New York courts, the statute requires a plaintiff to prove first, that business was transacted in New York by the defendant either in person or through an agent, and second, that its claim arises out of that transaction of business. *Cutco, supra,* 806 F.2d at 365–66; *see McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 322 (1981).

■ There is little doubt that if SCAL is found to be involved in the AES, Ltd. joint

---

**2.** There has not been sufficiently "substantial discovery" to raise the standard of proof to the preponderance standard. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984).

**3.** In light of the court's holding, I need not discuss plaintiffs' assertion of jurisdiction under

CPLR § 301. This does not, of course, indicate anything about plaintiffs' chances of ultimately proving jurisdiction under that statute. *See Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 537–38, 281 N.Y.S.2d 41, 44–45, 227 N.E.2d 851, 853–54, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).

venture, plaintiffs will have met their burden at this stage. Under § 302(a)(1), the Court must assess the totality of a nondomiciliary defendant's contacts with New York to determine whether the exercise of jurisdiction would be proper. *Cutco, supra,* 806 F.2d at 365. Jurisdiction must be sustained when the nondomiciliary " 'purposefully avails [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.' " *Id.* (citations omitted); *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958). Here the allegation of SCAL's participation in a joint venture operating out of New York would be sufficient to fulfill this requirement. *See id.*

■ Similarly, the scope of SCAL's participation in the alleged joint venture is sufficiently broad to provide the "articulable nexus" that must exist between a nondomiciliary's forum contacts and the transaction sued on. *See McGowan, supra,* 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323. The steering committee minutes and the Uggla deposition reveal discussion of virtually every facet of AES, Ltd.'s operations. At this stage of the proceedings, and examining plaintiffs' allegations in the best possible light, SCAL's transaction of business " 'bear[s] a substantial relation to the transaction out of which the instant cause of action[s] arose." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983) (citation omitted); *see also Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1531 (S.D. N.Y.1985) (Leisure, J.); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 465–67, 261 N.Y.S.2d 8, 25–26, 209 N.E.2d 68, 80–82, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

We turn, then, to whether plaintiffs have proved a relationship between SCAL and AES, Ltd. sufficient to hold SCAL subject to the jurisdiction of this court pursuant to § 302(a)(1).

Under New York law, a joint venture is generally defined as a special combination of two or more persons who have embarked on some specific profit-seeking venture without having established a formal partnership or corporate designation. *Sherrier v. Richard,* 564 F.Supp. 448, 457 (S.D.N.Y.1983) (Sweet, J.) (citing *Chalmers v. Eaton Corp.,* 71 A.D.2d 721, 419 N.Y. S.2d 217 (3d Dep't 1979)). "Each joint venturer ordinarily stands in the relation of principal, as well as agent, as to each of the other coventurers." *Cutco, supra,* 806 F.2d at 366 (citations omitted).

Although courts look to a variety of well-defined factors to determine whether a joint venture exists for the purpose of determining liability, *see, e.g., Sherrier, supra,* 564 F.Supp. at 457, in determining whether a joint venture exists for jurisdictional purposes "courts have focused on the realities of the relationship in question rather than the formalities of agency law." *Cutco, supra,* 806 F.2d at 366. "To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state 'for the benefit of, and with the knowledge and consent of,' the nonresident principal." *Id.* (quoting *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981)); *see also Louis Marx & Co. v. Fuji Seiko Co.,* 453 F.Supp. 385, 390 (S.D.N.Y. 1978) (Weinfeld, J.). "Some courts have also required the principal to exercise 'some control' over the agent." *Cutco, supra,* 806 F.2d at 366 (citing *Grove Press, supra,* 649 F.2d at 122).

Reading plaintiffs' allegations in their best light, as I must, there is little doubt that they have established an agency relationship between SCAL and AES, Ltd. sufficient to withstand a motion to dismiss. They have shown that the managing director of SCAL sat on the steering committee that ran AES as a representative of "SC Sydney," which, as plaintiffs point out, can hardly stand for anything other than SCAL. From the Uggla deposition and the minutes of the steering committee meeting, *see* Yudes Affidavit, Exhibits A, F, it is obvious that the committee controlled most, if not all, of AES, Ltd.'s major decisions, including decisions regarding its finances, major contracts, and business strategy.

Although the exact details of the AES, Ltd.-SCAL relationship must be developed through further discovery, at this stage it is evident that SCAL exercised "some control" over AES, and that AES operated "for the benefit of, and with the knowledge and consent of," the Australian company. *See Cutco, supra,* 806 F.2d at 366.

SCAL points to only two alleged defects in the plaintiffs' joint venture theory, neither of which requires much discussion. First, SCAL argues that "there is no evidence that SCAL, as distinct from Rasmussen in his individual capacity, had any control over, or participated in, the affairs of AES." Reply Memorandum at 9–10. Presumably, this argument is based on the proposition that Rasmussen sat on the steering committee in a capacity analogous to that of an outside director. Considering the fact that the committee consisted of only four members, and that Rasmussen was referred to as representing "SC Sydney," this argument strains credulity. As one court responded to a similar argument, "common sense ... need not be banished from our reckoning." *Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1331 (E.D.N.Y.1981) (finding that nondomiciliary's former employee was its agent for jurisdictional purposes).

 SCAL's second argument may be relevant at some later stage of this litigation, but is of no relevance on the instant motion. SCAL argues that plaintiffs' failure to prove any financial or proprietary relationship between SCAL and AES, Ltd. precludes a finding of jurisdiction over SCAL on a joint venture theory. If liability is the issue before the court, then SCAL is correct that an agreement on the division of profits and losses is the "crucial element of a joint venture." *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 690 (2d Cir.1983); *see also McGhan v. Ebersol,* 608 F.Supp. 277, 283 (S.D.N.Y.1985) (Sweet, J.). As explained above, however, when the question is whether the court may exercise personal jurisdiction over an alleged joint venturer, then this technical agency requirement is abandoned in favor of a more common-sense analysis of the situation. *Cutco, supra,* 806 F.2d at 366; *see also Larsen v. A.C. Carpenter, Inc.,* 620 F.Supp. 1084, 1105 (E.D.N.Y.1985), *aff'd,* 800 F.2d 1128 (2d Cir.1986) (even on question of liability, close organizational structure of two companies by itself "almost satisfies" requirements of joint venture).

I find that plaintiffs have met their burden of proving a *prima facie* case of personal jurisdiction over SCAL. SCAL is ordered to respond to plaintiffs' discovery requests on the jurisdictional issues. This will give the parties and the court an indication of whether plaintiffs will be able to meet their ultimate burden of proving jurisdiction by a preponderance of the evidence.

IT IS SO ORDERED.