PETROLEUM SERVICES HOLDINGS, INC. (formerly Offshore Crews, Inc.) and Insurance Company of North America

v.

MOBIL EXPLORATION AND PRODUCING SERVICES, INC., and Rowandrill, Inc.

No. Civ. A. No. 86–0303 L.

United States District Court, D. Rhode Island.

March 2, 1988.

Edmund L. Alves, Jr., Gorham and Gorham, Providence, R.I., for plaintiffs.

A. Lauriston Parks, Hanson, Curran Parks & Whitman, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The issue presented by the parties for decision in this matter is whether the Court has personal jurisdiction over defendant Rowandrill, Inc. (Rowandrill) in accordance with the strictures of the due process clause of the Fourteenth Amendment. For the reasons hereinafter expressed, the Court holds that it does not have personal jurisdiction over Rowandrill; therefore, plaintiffs' claims against that defendant must be dismissed.

Although the participants in this case are numerous, they can be divided into two groups for the purposes of this motion. They are as follows.

Offshore Crews, Inc. (Offshore) was, at the time in question, a Louisiana corporation which was engaged to provide crew members for the M/V ADVENT SEAHORSE. The Insurance Company of North America (INA) is a Pennsylvania corporation which provided maritime insurance for Offshore.

Defendant Mobil Exploration and Producing Services, Inc. (MEPSI) is a Delaware corporation which used the ADVENT SEAHORSE to stand by oil rigs for pollution control purposes in conjunction with its oil exploration operations. Defendant Rowandrill is a corporation organized under the laws of the State of Texas, with its principal place of business in Houston, Texas. It was the owner of the oil rig ROWAN MIDLAND. MEPSI contracted with Rowandrill to drill for oil off the Georges Bank using that rig.

On January 16, 1982, Paul J. Dunn was injured while being transferred from the oil rig ROWAN MIDLAND to the ADVENT SEAHORSE. When the injury took place, the ROWAN MIDLAND was being used by MEPSI for oil drilling operations in the Atlantic Ocean, Georges Bank at an approximate position of Latitude 40°39′27″ North, Longitude 67°45′55″ West; there is no dispute that this position lies outside the territorial waters of the State of Rhode Island.

At the time of Dunn's injury, Rowandrill maintained a "support office" at Quonset Point, Rhode Island. In September of 1982, however, Rowandrill removed its support office from Rhode Island after it had been here for less than one year. Aside from this contact, Rowandrill had no other physical ties with Rhode Island.

Sometime in 1983, Dunn instituted two actions in this Court which eventually took the form of Paul J. Dunn against Offshore, MEPSI, Seahorse Fleet, Inc. (Seahorse) and Rowandrill. These actions were brought under the Jones Act and invoked the admiralty jurisdiction of this Court.

In June of 1984, the Dunn matter was settled. A reservation of rights agreement

was signed between Offshore, MEPSI, Seahorse and INA in which MEPSI and Offshore and/or INA each agreed to pay $216,250 to Dunn. These parties, however, reserved the right to proceed against any other entity or person who may have been responsible for Dunn's injuries.

Two years passed by. Then in May of 1986, Offshore and INA instituted this action in this Court against MEPSI seeking indemnification of the sums they paid to Dunn. Rowandrill was added as a party defendant to this action when Offshore and INA amended their complaint in September of 1987. This amended complaint and summons was served upon Rowandrill pursuant to Fed.R.Civ.P. 4(c)(2)(C)(i) and R.I.R. Civ.P. 4(e)(2).

In October of 1987, MEPSI and Rowandrill answered plaintiffs' complaint. In Rowandrill's answer, it is averred that Rowandrill did not have "sufficient minimum contacts" with the State of Rhode Island for this Court to assert *in personam* jurisdiction over it by means of Rhode Island's long-arm statute. After these answers were filed, Offshore and INA moved to substitute Texas Eastern Transmission Corporation in place of Offshore pursuant to Fed.R.Civ.P. 25. This motion was granted in November of 1987. Most recently, Petroleum Services Holdings, Inc. was substituted for Texas Eastern as a party plaintiff.

In January of this year, Rowandrill moved to dismiss plaintiffs' amended complaint for lack of jurisdiction over the person. Plaintiffs promptly objected to the motion to dismiss. The matter was heard on February 4, 1988, at which time it was taken under advisement. Having carefully considered the contentions of both sides on the jurisdiction issue, the Court is now prepared to decide the matter treating Rowandrill's motion as one for summary judgment since matters outside the pleadings must be considered.

This case invokes the Court's admiralty jurisdiction. When *in personam* jurisdiction is disputed in a non-diversity case, the First Circuit Court of Appeals has directed district courts to scrutinize the rules by which service of process was accomplished. *Compare Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 & n. 3 (1st Cir.1984) *with Trans–Asiatic Oil LTD. S.A. v. Apex Oil Co.*, 743 F.2d 956, 958–959 (1st Cir.1984). *See also Catrone v. Ogden Suffolk Downs, Inc.*, 647 F.Supp. 850 (D.Mass.1986); *Colon v. Gulf Trading Co.*, 609 F.Supp. 1469 (D.P.R.1985). The purpose of this mandate is to determine if Congress has allowed the district courts to exercise the full extent of their power to bring parties before them by some special federal service of process rule. *E.g., Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir.1985).

■ If, upon examination, the service of process rule is federal in nature and the defendant was properly served within the sovereign territory of the United States, minimum contacts analysis is immaterial to deciding the jurisdiction question. *Johnson Creative*, 743 F.2d at 950 n. 3. If, instead, the defendant was properly served outside the sovereign territory of the United States, the question arises whether the defendant has "minimum contacts" with the United States. *Trans–Asiatic Oil*, 743 F.2d at 959.

■ Upon examination, it is apparent that plaintiffs have not invoked any special service of process rule in this case. Rowandrill was served pursuant to R.I.R.Civ. P. 4(e)(2) and R.I.Gen.Laws § 9–5–33 (1985) via Fed.R.Civ.P. 4(c)(2)(C)(i). Since plaintiffs have utilized a state service of process rule to bring Rowandrill before this Court, the traditional two-step process for determining whether the Court has personal jurisdiction over a defendant applies in this case.

That process is as follows: 1) Are the requirements of the long-arm statute of the state in which the district court is located satisfied? 2) Do the requirements of the state long-arm statute comport with the strictures of the due process clause of the Fourteenth Amendment?

With respect to the first step, the Rhode Island Supreme Court has held that Rhode Island's long-arm statute "extends up to

the constitutional limitation." *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969). Inquiry then focuses upon whether the long-arm statute satisfies the due process clause of the Fourteenth Amendment.

The United States Supreme Court has established a three part test in determining whether a state's long-arm statute violates the due process clause. First, one must determine whether the jurisdiction is specific or general. Then, depending upon the type of jurisdiction that is exercised, one must examine the nature of the defendant's contacts with the forum state. Lastly, if the specific jurisdiction of the court in invoked in accordance with the due process clause, one must still inquire whether it is unreasonable for the Court to exercise personal jurisdiction over the defendant.

In *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984), the Supreme Court indicated that a federal district court exercises specific jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." Conversely, where plaintiff's claims do not arise out of or are not directly related to defendant's contacts with the forum state, a court exercises general jurisdiction. *Id.* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9.

▮ Both sides concede that in an action for indemnification, reference must be made to the circumstances surrounding the original cause of action. In an action for indemnification, the parties are essentially litigating the issue of who was at fault at the time of the original tort.

In the present case, the original cause of action arose when Dunn was injured while being transported from the ROWAN MIDLAND onto the ADVENT SEAHORSE. It is undisputed that this injury occurred at an approximate position of Latitude 40° 39′ 31″ North, Longitude 67° 45′ 55″ West, which is outside the territorial waters of the State of Rhode Island. Dunn's cause of action then neither arose out of nor was directly related to any contacts that Rowandrill had with the State of Rhode Is-

land. Dunn's claim only arose out of or was directly related to contacts that Rowandrill had *outside* the forum state. Any relationship between Dunn's initial claim and Rowandrill fails to trigger the specific jurisdiction of this Court.

The only other possible basis for the exercise of specific jurisdiction is the reservation of rights agreement that Offshore, MEPSI, and INA signed in 1984. Rowandrill, however, was never party to this agreement. Plaintiffs' action against Rowandrill, therefore, is not grounded in contract. The result of this conclusion is that any contact that Rowandrill may have had with Rhode Island in settling Dunn's claims in 1983 and 1984 does not have any connection with plaintiffs' cause of action in this case. The reservation of rights agreement, therefore, cannot provide a basis for this Court to assert specific jurisdiction over Rowandrill.

Although the Court's specific jurisdiction is not involved in this case, the Court's general jurisdiction may be implicated. Between 1982 and 1984, Rowandrill did have contact with the State of Rhode Island that was unrelated to Dunn's original claim. For less than a year in 1981–1982, Rowandrill had a support office in Rhode Island to aid in its offshore drilling operations. Moreover, Rowandrill was a party before this Court for about two years while Dunn's original maritime action was pending.

▮ The question remains, however, whether this Court may exercise its general jurisdiction over Rowandrill without coming in conflict with the strictures of the due process clause. In *Helicopteros*, 466 U.S. at 415, 104 S.Ct. at 1872, the Supreme Court indicated that contacts unrelated to a plaintiff's cause of action must be "continuous and systematic" with the forum state in order to comport with the due process clause.

In *Helicopteros*, for example, the chief executive of a Columbian corporation (Helicol) flew to Texas to discuss the sale of helicopters to a joint-venture (Consortio) with its headquarters in Houston, Texas.

*Id.* at 410, 104 S.Ct. at 1870. Prior to the consumation of this agreement, Helicol had other contacts with the State of Texas. Helicol purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4,000,000 from Bell Helicopter Company in Fort Worth, Texas. Moreover, Helicol sent prospective pilots, management and maintenance personnel to Fort Worth for training and "plant familiarization." Finally, Helicol received over $5,000,000 in payments from Consorcio drawn upon First City National Bank of Houston. *Id.* at 410–411, 104 S.Ct. at 1870–1871. Despite the apparent substantial nature of these contacts with the State of Texas, the *Helicopteros* court held "Helicols' contacts with the State of Texas were insufficient to satisfy the requirements of the Due Process Clause." *Id.* at 418–419, 104 S.Ct. at 1874.

The substantial number of contacts Helicol had with Texas in *Helicopteros* stand in sharp contrast with the few and slight contacts that Rowandrill had with Rhode Island in the present case. For a little less than one year in 1981 and 1982 Rowandrill had a "support office" at Quonset Point, Rhode Island. Rowandrill, however, pulled this office out of Rhode Island in September of 1982, approximately nine months after Dunn was injured.

The only other contact that Rowandrill had with Rhode Island is that Rowandrill was named as a party defendant in Dunn's maritime tort action. Nothing appears to show the nature of Rowandrill's contacts with this state at that time. Indeed, it is unlikely that Rowandrill had any contact with Rhode Island during the Dunn litigation because there existed an "indemnity agreement" between Rowandrill and MEPSI. Under this agreement, MEPSI was to reimburse Rowandrill for any award that Dunn secured against Rowandrill in his tort action. Rowandrill's posture in the Dunn litigation, then, was merely passive; it did not interfere with the efforts of MEPSI, Offshore and their insurers to settle the matter with Dunn.

Being named as a party defendant in litigation and having a temporary support office in the forum state does not even closely compare with the number of contacts that Helicol had with Texas in *Helicopteros*. Helicol sent management, maintenance personnel and pilots to Texas for seven years prior to the decedents' deaths in that case. In addition, over the seven years, Helicol purchased a substantial number of helicopters, spare parts and accessories from firms in the forum state. These contacts in themselves would seem greater than the temporary presence of a support office in Rhode Island. Rowandrill's contacts with this state were simply not of a "continuous and systematic" nature. This Court, therefore, may not constitutionally assert its general *in personam* jurisdiction over defendant Rowandrill in this case.

For all the above reasons, defendant Rowandrill's motion to dismiss the amended complaint against it for lack of jurisdiction over the person is granted.

*It is so Ordered.*