Edward McALEER, Administrator of the Estate of James F. McAleer, Hardy Lebel and Joan Lebel, Administrators of the Estate of Thomas Lebel, Plaintiffs,

v.

Travers C. SMITH, Administrator of the Estate of Stuart A. Finley, Mark Shirley Portal Litchfield and Robin Patrick Cecil–Wright d/b/a the China Clipper Society, Goods Export Ltd. d/b/a the China Clipper Society, Berry Brothers and Rudd Ltd. d/b/a Cutty Sark, American Sail Training Association and Lloyds of London, Defendants.

Civ. A. No. 88–544 L.

United States District Court, D. Rhode Island.

June 30, 1989.

Edmund R. Pitts, Pitts and Pitts, M. Frederick Pritzker and Steven L. Feldman, Brown, Rudnick, Freed and Gesmer, Boston, Mass., and Bruce Tucker, Providence, R.I., for Berry Bros. & Rudd Ltd.

F. Dore Hunter and Brian Flanagan, Boston, Mass., for Robin Patrick Cecil–Wright.

Jerome Flanagan, Boston, Mass., for Mark Shirley Portal Litchfield.

LeBoeuf, Lamb, Leiby & MacRae, London, England, for Lloyds of London.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on motions by four of the above-named defendants to dismiss the complaint against them for lack of personal jurisdiction. Plaintiffs Edward McAleer, Administrator of the Estate of James F. McAleer, and Hardy and Joan Lebel, Administrators of the Estate of Thomas Lebel, filed this action against defendants Travers C. Smith, Administrator of the Estate of Stuart A. Finley, Mark Shirley Portal Litchfield ("Litchfield") and Robin Patrick Cecil–Wright ("Cecil–Wright") d/b/a The China Clipper Society ("China Clipper"), Goods Export Ltd., d/b/a The China Clipper Society ("Goods Export"), Berry Brothers and Rudd Ltd. d/b/a Cutty Sark ("BBR"), American Sail Training Association ("ASTA"), and Lloyd's of London ("Lloyd's").

The suit arises out of the sinking of the sailing vessel S/V MARQUES in June 1984 during the "Cutty Sark International Tall Ships Race" ("Tall Ships Race") from Bermuda to Halifax, Nova Scotia. Plaintiffs' teenaged sons were among the sail trainees on the S/V MARQUES who perished when that tall ship went down in a storm some eighty miles northeast of Bermuda. Plaintiffs brought this action under the Jones Act, 46 U.S.C.App. § 688, the Death on The High Seas Act, 46 U.S.C.App. §§ 761 and 762, and the general maritime law of unseaworthiness and negligence for the personal injuries, conscious pain and suffering, and death of their decedents. Plaintiffs subsequently amended their complaint to add several counts of deceit and breach of warranty.

This Court's jurisdiction over the current controversy is predicated on questions

raised in the complaint involving admiralty and federal law. 28 U.S.C. §§ 1331, 1333. This case was transferred here pursuant to 28 U.S.C. §§ 1406 and 1631 from the District of Massachusetts on September 7, 1988 by order of United States District Judge Skinner who determined, *inter alia,* that Massachusetts lacked in personam jurisdiction over Litchfield and Cecil–Wright.

Defendants Litchfield, Cecil–Wright, Goods Export, and BBR now seek dismissal from this case claiming that they are not amenable to suit in this forum for want of personal jurisdiction. The moving parties are residents of England and of these British subjects only defendant Litchfield has had personal contact with the District of Rhode Island. Plaintiffs claim, however, that all these defendants established minimum contacts in Rhode Island through acts of their designated agents.

## BACKGROUND

Plaintiffs assert that Litchfield and Cecil–Wright were co-owners of the S/V MARQUES at all times pertinent to this action. These two equal partners shared ownership of the China Clipper Society, an unincorporated holding company that maintained title to the sixty-seven year old tall ship. Litchfield described China Clipper as a "trading extension" of Goods Export, which is an English corporation with assets in Great Britain. According to plaintiffs, Goods Export is the "beneficial" or "equitable" owner of the S/V MARQUES. Other defendants named by plaintiffs but not parties to the instant motions to dismiss are Lloyd's, the British insurance underwriting society that purportedly lent its name to the promotion of China Clipper's vessels, the Estate of Stuart A. Finley (Finley was the Captain of the S/V MARQUES who went down with the vessel), and ASTA, a non-profit Rhode Island Corporation established in 1973 that solicited and supervised sail trainees for China Clipper.

Turning now to the relationship among Litchfield, Cecil–Wright, China Clipper, and Goods Export, it is undisputed that Litchfield and Cecil–Wright were partners in China Clipper and that this organization maintained a promotional office in Newport, Rhode Island from April 1983 to April 1984. It is also clear that the primary assets of China Clipper were the S/V MARQUES and her sister vessel the S/V INCA.

The China Clipper office in Newport was established to promote the commercial services of the S/V MARQUES and the S/V INCA, including their use as sail training vessels. To this end, Litchfield on behalf of China Clipper negotiated a contract with ASTA for that Newport-based sailing association to solicit and supervise trainees for the June 1984 Tall Ships Race. Under this agreement, ASTA actively solicited trainees for the Bermuda–to–Halifax voyage of the S/V MARQUES. ASTA's three-person staff placed advertisements in sailing magazines, distributed literature to various college campuses, and provided information to potential trainees at its Rhode Island business office. Trainee applications, registrations, and payments for participation in the 1984 Tall Ships Race were processed by ASTA personnel in Newport. ASTA retained the sum of $50 per trainee for administrative expenses and remitted $600 per trainee to China Clipper. ASTA also placed two of its sailing counselors aboard the S/V MARQUES to supervise trainees and to serve as liaison between the ship captain and the trainees.

For its part, China Clipper agreed through Litchfield to supply a seaworthy, properly maintained vessel with appropriate safety provisions and liability insurance. In addition to making these assurances to ASTA, Litchfield personally represented in China Clipper's application for entry in the 1984 Tall Ships Race that the S/V MARQUES was seaworthy and in compliance with British nautical safety standards.

Litchfield directed China Clipper's activities in Newport through two personal visits to Rhode Island in early 1983 and by means of continual correspondence with ASTA by telephone, telex, and letter beginning in February or March of 1983, extending through the negotiation of the April contract, and ending some time after the June 3, 1984 sinking of the S/V MARQUES.

During this period, Litchfield expressly retained personal control over China Clipper operations including activities associated with ASTA and the Tall Ships Race. From the commencement of the contract period on April 16, 1983 until the loss of the S/V MARQUES, ASTA administered the sail training program on behalf of China Clipper.

The role that Goods Export played in this controversy is less than clear. The papers submitted by plaintiffs indicate that Litchfield was a director of this English corporation as of 1987 at which time the company's assets were frozen pending the outcome of business disputes between Litchfield and Cecil–Wright. Plaintiffs fail, however, to tie Goods Export to Rhode Island, to the S/V MARQUES, or to the April 16, 1983 contract between China Clipper and ASTA. There are no allegations that Goods Export ever conducted business in Rhode Island or that it owned or operated the S/V MARQUES during the period pertinent to this suit, nor is there any indication that Goods Export was a party to the arrangement involving solicitation and supervision of sail trainees for the June 1984 Tall Ships Race.

The 1984 Bermuda–to–Halifax race did, however, involve another British corporation. BBR, the distiller of Cutty Sark Scotch Whiskey, is named as a defendant because, according to plaintiffs, this spirit-maker sponsored the June 1984 sailing event as the "Cutty Sark International Tall Ships Race." BBR allegedly induced plaintiffs' decedents to participate in ASTA's sail training program through the promotional activities of its sole selling agent in the United States, the Buckingham Wile Company of New York. Plaintiffs state in their complaint that such inducements were made when BBR knew, or should have known, that the S/V MARQUES was unsafe, understaffed, and unfit for the high seas.

## DISCUSSION

This Court has repeatedly stated that its in personam jurisdiction over nonresident defendants can only be asserted when such defendants have established minimum contacts with this forum. *Russo v. Sea World of Florida, Inc.*, 709 F.Supp. 39 (D.R.I. 1989); *Donatelli v. National Hockey League*, 708 F.Supp. 31 (D.R.I.1989); *Wood v. Angel*, 707 F.Supp. 81 (D.R.I.1989); *American Sail Training Ass'n v. Litchfield*, 705 F.Supp. 75 (D.R.I.1989); *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989); *Levinger v. Matthew Stuart & Co., Inc.*, 676 F.Supp. 437 (D.R.I.1988); *Petroleum Services Holdings, Inc. v. Mobil Exploration and Producing, Inc.* 680 F.Supp. 492, 494 (D.R. I.1988); *Dupont Tire Service Center, Inc. v. N. Stonington Auto–Truck Plaza, Inc.*, 659 F.Supp. 861 (D.R.I.1987). Minimum contacts are the crux of constitutionally permitted personal jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The burden of demonstrating the sufficiency of this critical element of due process rests with the plaintiff. *Riverhouse Publishing Company v. Porter*, 287 F.Supp. 1, 9 (D.R.I.1968).

In *Thompson Trading* this Court discussed the Supreme Court's guidelines for determining whether a foreign defendant's contacts with a forum meet the constitutional threshold for assertion of personal jurisdiction. 123 F.R.D. at 417 *citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Under the doctrine of general in personam jurisdiction, a defendant must have such "continuous and systematic" contacts with the forum that bringing him into court on any matter, whether arising out of those contacts or not, does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). "On the other hand, under the doctrine of specific in personam jurisdiction, one forum contact can be sufficient to subject a foreign defendant to a court's jurisdiction if, and only if, the cause of action sued upon arises out of or relates to the contact." *Russo v. Sea World* at 41, *Dupont Tire Service Center, Inc. v. N. Stonington Auto–Truck Plaza,*

*Inc.* at 863. *See also, Rhode Island Hospital Trust Nat. Bank v. San Gabriel Hydroelectric,* 667 F.Supp. 66 (D.R.I.1987).

Specific personal jurisdiction analysis requires an additional step that turns on the nature of the underlying action. In a contract controversy, defendant submits to specific jurisdiction when he purposefully avails himself of the privileges, benefits, and protections of the forum state's laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). By way of example, in *American Sail Training Ass'n v. Litchfield,* 705 F.Supp. 75 (D.R.I.1989), an indemnification action was brought by ASTA against Litchfield and Goods Export. As a preliminary matter, this Court ruled that defendant Litchfield was subject to specific in personam jurisdiction in this forum. The indemnification claim was an action in contract arising out of or related to the agreement between ASTA and Litchfield. Furthermore, Litchfield had actively negotiated the disputed contract in Rhode Island thereby exposing himself to suit in this jurisdiction. Goods Export was not connected to the contract at issue and was therefore dismissed. Had the dispute been a tort action, however, the holding concerning Litchfield would have been different.

The purposeful availment doctrine does not apply to tort claims. Tortfeasors are at odds with the privileges, benefits, and protections of local laws. Therefore, jurisdictional determinations in tort cases focus on the causal link between the forum contact and the allegedly tortious act.

In *Russo v. Sea World* plaintiff was injured on the premises of the foreign defendant's out-of-state amusement park. In rejecting plaintiff's plea to hale defendant corporation into federal court in Rhode Island, this Court observed that solicitation of customers and sale of tickets in Rhode Island by a nonresident corporation were contract-related activities that did not provide any causal connection to the allegedly tortious conduct of defendant.

The question of whether a cause of action arises out of or relates to a defendant's forum contact is analogous to the issue of proximate cause in tort law. *See generally* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts,* § 42 (5th ed. 1984). On one level, Russo's injuries do arise out of or relate to Sea World's alleged contact with Rhode Island because, but for Russo's ticket purchase here, she might not have gone to defendant's Florida facility and fallen over a stroller. On the other hand, but for the pre-historic invention of the wheel, Russo would not have fallen over a stroller for no stroller would have existed. While both the invention of the wheel and the Rhode Island ticket purchase are, in a sense, causally linked to plaintiff's fall, the relevant inquiry is whether the connections are sufficiently direct and related to the injury in a legal sense to justify the exercise of personal jurisdiction or the award of damages in tort.

709 F.Supp. at 42.

Bearing these jurisdictional precepts in mind, the Court now addresses defendants' specific motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(2).

### *Defendant Litchfield*

As previously noted, this case sounds in tort law thereby rendering the jurisdictional determination in the contract dispute, *American Sail Training Ass'n v. Litchfield,* inapposite to the current personal jurisdiction question. Here, Litchfield argues as follows: his personal contacts with this forum were contractual in character, the S/V MARQUES never operated in Rhode Island, the cause of action arose on the high seas, and there exists no legally sufficient nexus between the ASTA contract and the allegedly tortious conduct.

Plaintiffs claim that the tort action presently before the Court stems directly from representations and inducements made to decedents by Litchfield's promotional personnel in Newport. Absent these purported misrepresentations concerning the seaworthiness of the S/V MARQUES, plaintiffs contend their decedents would not have enrolled in the Tall Ships Race. This argument fails for the reasons discussed

*supra* in *Russo v. Sea World.* The so-called inducements or misrepresentations go to a contractual matter involving ASTA, China Clipper, and the trainees. These solicitation activities do not relate directly to the personal injuries suffered by plaintiffs' decedents on the high seas.

Plaintiffs also fail to demonstrate that Litchfield personally maintained the continuous and systematic course of conduct in Rhode Island that is required to assert general in personam jurisdiction. He did not visit Rhode Island after entering into the April 1983 contract with ASTA, and he closed China Clipper's Newport office more than one month before the sailing of the June 1984 Tall Ships Race. *See Petroleum Services Holdings, Inc. v. Mobil Exploration and Producing, Inc.*, 680 F.Supp. at 495 (D.R.I.1988) (claim of general jurisdiction rejected when defendant corporation closed its local field office prior to suit). If these were Litchfield's only contacts with this forum, he would be dismissed as a party to this action for want of personal jurisdiction. There is, however, another basis for asserting general in personam jurisdiction over this defendant.

ASTA's continuous and systematic operations in Rhode Island during the lifetime of the sail training contract can arguably be imputed to Litchfield under principles of agency law. *Lawrence v. Anheuser-Busch, Inc.*, 523 A.2d 864, 867 (R.I.1987). If such an agency arrangement exists, ASTA's contacts in Rhode Island then subject Litchfield to this forum's jurisdiction. Litchfield directed China Clipper operations in Newport and decided to employ ASTA as a sales agent for the S/V MARQUES. His acts and interests in Newport ostensibly were those of China Clipper. Under these circumstances, Litchfield served either as ASTA's principal with a right to control the solicitation and supervision of sail trainees, or as a co-venturer and mutual agent concerning the Tall Ships Race. In either case, these are mixed questions of law and fact, *Etheridge v. Atlantic Mut. Ins. Co.*, 480 A.2d 1341, 1346 (R.I.1984), that at this procedural juncture must be resolved in favor of the plaintiffs.

For these reasons, Litchfield's motion to dismiss is denied.

### Defendants Cecil–Wright and Goods Export

Under principles of partnership law, a partner is an agent of the partnership and the other partners for acts apparently done in furtherance of usual partnership business. *See* R.I.Gen.Laws 7–12–20 (1957). The usual business conducted by China Clipper was the hiring out of the S/V MARQUES and S/V INCA for films, advertisements, charters, promotions, and other commercial purposes. Sail training and tall ship races were two such purposes.

Litchfield and Cecil–Wright were joint owners of the S/V MARQUES through their partnership in China Clipper. China Clipper held title to the S/V MARQUES and served as the promotional arm of Goods Export. Cecil–Wright now claims that his ownership interest in Goods Export, China Clipper, and the S/V MARQUES terminated March 31, 1983, only days before the China Clipper office was opened in Newport. He also states that Litchfield became sole owner of the ship on that date, and that the vessel was unseaworthy at the time of the Tall Ships Race in June of the following year.

■ The Court thus is presented with conflicting assertions regarding Cecil–Wright's partnership status. Plaintiffs aver that this defendant was a partner in Goods Export, China Clipper, and the S/V MARQUES from April 1983 through the June 1984 sinking of that vessel. Cecil–Wright contends, however, that he withdrew from China Clipper before April 1983. The Court accepts plaintiffs' version of these disputed facts for purposes of ruling on Cecil–Wright's motion, bearing in mind that plaintiffs will have the burden of proof on this issue at trial. Defendant Cecil–Wright will remain a party to this action due to the minimum contacts established by his partnership with Litchfield through their agent ASTA in Newport. Cecil–Wright's motion to dismiss for lack of personal jurisdiction is denied as are his related motions for dismissal based on improper

venue and *forum non conveniens. See American Sail Training Ass'n v. Litchfield* at 80–81.

■ Goods Export, however, must be dismissed from this action for lack of in personam jurisdiction. Even when extra-pleading material is considered, plaintiffs fail to establish minimum Rhode Island contacts by this defendant. *Id.* at 79.

The partnership and agency principles that tie Cecil–Wright to this forum do not apply to Goods Export. In *Thompson Trading* this Court ruled that a British corporation was not subject to personal jurisdiction by or through the independent activities of its wholly-owned subsidiary doing business in this federal district. 123 F.R.D. at 428 *citing Miller v. Honda Motor Co., Ltd.*, 779 F.2d 769 (1st Cir.1985). In the instant case, there is no evidence connecting Goods Export to the promotional activities of Litchfield, China Clipper, or ASTA. Plaintiffs' allegation that Goods Export was the "beneficial" or "equitable" owner of the S/V MARQUES is a bald, ambiguous, and legally insufficient factual assertion. The controlling fact here, supplied by plaintiffs, is that China Clipper owned the S/V MARQUES. For these reasons, the motion of Goods Export to be dismissed from this action for lack of personal jurisdiction is granted.

### Defendant BBR

■ BBR argues that it does not do business in the United States and that, on this basis, it should be dismissed from the current controversy. The distiller claims that it sells its Cutty Sark Scotch Whiskey in England to Buckingham Wile Company, its exclusive distributor in the United States. Title to the liquor passes from distiller to distributor on the London docks. Thereafter, BBR's only control over sale of its product in the United States is a reserved right to restrict promotional activities it deems inappropriate.

Plaintiffs' position is that BBR and Buckingham Wile are principal and agent because BBR has exercised significant control over the distribution of Cutty Sark in the United States. In support of this assertion plaintiffs underscore a number of salient facts.

The original 1961 contract between BBR and Buckingham (predecessor to Buckingham Wile) describes BBR as "the Principal" and Buckingham as "the Agent." The 1961 contract terms forbade Buckingham from representing most other distilleries and reserved in BBR the right to terminate marketing activities it regarded as harmful to the promotion of its product. These terms were extended and expanded in 1984 soon after the merger of Buckingham with Julius Wile Sons, Inc. established the Buckingham Wile Company as BBR's "sole selling agent" in the United States. Thereafter, BBR became involved in all stages of reviewing and revising Buckingham Wile's marketing plan which by agreement of the parties entailed the expenditure by the distributor of at least $14 million per year for marketing Cutty Sark.

Buckingham Wile undisputably promotes and sells Cutty Sark in Rhode Island on a regular basis. The Rhode Island Department of Business Regulation's Liquor Control Administration issued the distributor a Certificate of Compliance for the purpose of transporting into the state certain alcoholic beverages including "Cutty Sark Blended Scotch." Further, Rhode Island sales of Cutty Sark were reported to BBR as part of regularly prepared and submitted cumulative depletion reports.

The Court finds that plaintiffs have presented sufficient indicia of a principal-agent relationship between BBR and Buckingham Wile at this stage to overcome BBR's motion to dismiss for lack of personal jurisdiction. The right of the principal to control the activities of the agent is the key factor here. The distiller (BBR) possessed a substantial right to control the marketing activities of its sole distributor of Cutty Sark in the United States. Since Buckingham Wile regularly promotes and sells Cutty Sark in Rhode Island, it has the requisite continuous and systematic contacts with this forum to subject its presumptive principal, BBR, to this Court's general in personam jurisdiction. Of course, the plain-

tiffs will have the burden of proving this agency relationship at trial.

For the reasons expressed, BBR's motion to dismiss is denied.

### Summary

The motions of defendants Litchfield, Cecil–Wright, and BBR to dismiss the complaint against them for lack of personal jurisdiction in this forum are hereby denied as are Cecil–Wright's motions to dismiss for improper venue and *forum non conveniens.* The motion of Goods Export to dismiss for want of in personam jurisdiction is hereby granted.

*It is so Ordered.*