**Edward McALEER, Administrator of the Estate of James F. McAleer, Hardy Lebel and Joan Lebel, Administrators of the Estate of Thomas Lebel, Plaintiffs,**

v.

**Travers C. SMITH, Administrator of the Estate of Stuart A. Finley, Mark Shirley Portal Litchfield and Robin Patrick Cecil–Wright d/b/a the China Clipper Society, Goods Export Ltd. d/b/a the China Clipper Society, Berry Brothers and Rudd Ltd. d/b/a Cutty Sark, American Sail Training Association and Lloyds of London, Defendants.**

**Civ. A. No. 88–0544 L.**

United States District Court,
D. Rhode Island.

Jan. 16, 1990.

---

Edmund M. Pitts, Boston, Mass., for plaintiffs.

Marvin Brill, Providence, R.I., Thomas Muzyka, Clinton Muzyka, Boston, Mass., for Cecil–Wright.

Frederick Pritzker, Boston, Mass., Bruce Tucker, Providence, R.I., for Berry Bros. and Rudd Ltd.

Flanagan & Hunter, Boston, Mass., for Litchfield.

Mary Betts, New York City, Bradford Gorham, Stephen Fanning, Edwards & Angell, Providence, R.I., for Lloyds of London.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

Defendant, Robin Patrick Cecil–Wright (Cecil–Wright), brought this matter before the Court on a motion for reconsideration of this Court's June 30, 1989 Memorandum and Order. That decision is published as *McAleer v. Smith*, 715 F.Supp. 1153 (D.R.I. 1989). In that Memorandum, this Court determined that there were sufficient allegations of in personam jurisdiction over Cecil–Wright to justify denial of his motion to dismiss the complaint against him.

Cecil–Wright now argues that this Court applied an incorrect legal standard when it decided to exercise personal jurisdiction over him in this forum based on his partnership status with Mark Shirley Porter Litchfield (Litchfield), d/b/a The China Clipper Society (China Clipper). While not admitting that he was a partner in China Clipper, Cecil–Wright argues that plaintiffs

have failed to present any facts indicating that Cecil–Wright was a "primary participant in the enterprise" giving rise to jurisdiction. Cecil–Wright cites *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), as authority.

A detailed overview of the case history can be found in *McAleer v. Smith, supra*, 715 F.Supp. 1153. In brief, plaintiffs, Edward McAleer and Hardy and Joan Lebel, filed this lawsuit as administrators of the estates of their respective relatives who drowned during the sinking of the S/V MARQUES in June, 1984. The ship sank off Bermuda while participating in the Cutty Sark International Tall Ships Race. In *McAleer* I, *supra*, this Court imputed the American Sail Training Association's (ASTA) continuous and systematic operations in Rhode Island to Litchfield as either ASTA's principal or as its co-venturer or mutual agent. *See id.* at 1158; *see also Etheridge v. Atlantic Mut. Ins. Co.*, 480 A.2d 1341, 1346 (R.I.1984) (question of agency mixed question of law and fact). At the time of the prior motion, the parties presented the Court with conflicting assertions of Cecil–Wright's partnership status as of April, 1983 when Litchfield entered into a contract with ASTA and June, 1984 when the vessel sank. The Court, emphasizing that plaintiffs would bear the burden of proof at trial, accepted plaintiffs assertions as true. This Court held that "[d]efendant Cecil–Wright will remain a party to this action due to minimum contacts established by his partnership with Litchfield through their agent ASTA in Newport." *McAleer* I, *supra*, 715 F.Supp. at 1158.

Cecil–Wright, has filed additional affidavits and memoranda, to support his claim that the partnership between Litchfield and himself was dissolved pre-April 1983. From this material, the Court has derived the following scenario. Prior to 1977, Cecil–Wright owned the MARQUES outright. In 1977, he conveyed a one-half interest to Litchfield and they then did business as a partnership under the name China Clipper Society. By letter, dated January 24, 1983, Cecil–Wright gave Litchfield notice of his

wish to terminate the partnership. Under the terms of the partnership agreement, either partner could terminate the partnership by serving the other with not less than six months written notice of such intent. Also pursuant to the agreement, Litchfield notified Cecil–Wright of his intent to purchase the partnership assets, including the MARQUES. An order of the High Court of Justice, Court of Chancery, England, dated October 14, 1985, provides that "as of March 31, 1983, [Litchfield] has been the sole beneficial owner of the whole of the subsisting assets of said former partnership." That Court determined that Cecil–Wright was obligated to sell his interest in the former partnership to Litchfield and then subtracted one-half the value of the MARQUES from debts owed by Cecil–Wright to Litchfield.

Cecil–Wright appears to claim that his notice of termination of the partnership ipso facto dissolved the partnership. He concludes that Litchfield was, therefore, not acting as his agent when Litchfield contracted with ASTA. In short, Cecil–Wright contends that this Court impermissably found in personam jurisdiction over him based on his partnership with Litchfield. In the alternative, he argues that in personam jurisdiction may be asserted on the basis of partnership only if the party over whom the court asserts jurisdiction was a "primary participant" in the enterprise.

### Discussion

■ In ruling on a motion to dismiss or a motion for reconsideration, this Court may, in its discretion, examine affidavits and extra-pleading material. *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417, 423, *reconsideration denied*, 124 F.R.D. 534, 535 (D.R.I.1989). When a court reviews extra-pleading material, however, the motion to dismiss for lack of jurisdiction becomes much like a motion for summary judgment. *American Express Int'l, Inc., v. Mendez–Capellan*, 889 F.2d 1175 (1989); *Petroleum Serv. Holdings, Inc. v. Mobil Exploration and Producing Serv., Inc.*, 680 F.Supp. 492, 494 (D.R.I.1988); *aff'd*, 887 F.2d 259 (1st Cir.1989); *Thompson*

*Trading, supra,* 123 F.R.D. at 422. Whether this Court treats this motion as one to dismiss or as one for summary judgment, however, will not affect the outcome here. Defendant Cecil–Wright should remain a defendant in this action at this time. Plaintiffs will have the burden of proving personal jurisdiction at trial. They have met their obligations at the pleading stage in making out a prima facie case of personal jurisdiction over Cecil–Wright in this forum. *See Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980); *Itel Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.,* 116 F.R.D. 477, 479 (S.D.N.Y.1987). Furthermore, too many disputed facts now exist for this Court to summarily decide that no jurisdiction exists over Cecil–Wright. *See Mendez–Capellan, supra.*

Cecil–Wright's status as of April, 1983, when Litchfield contracted with ASTA in Newport, is now less clear than before. Although he gave notice of his intent to terminate the partnership, the agreement required six months notice before termination would result. Thus, pursuant to their own agreement, the partnership terminated on June 24, 1983, six months after Cecil–Wright notified Litchfield. Further, if the High Court of Justice ordered Cecil–Wright to transfer his partnership interests to Litchfield as of October 14, 1985, it appears that Cecil–Wright maintained some interest in the MARQUES until that date. Rather than simplify the jurisdiction issue, Cecil–Wright's additional information clouds the facts and makes it more imperative that the question of jurisdiction proceed to trial.

■ Even if Cecil–Wright terminated the formal partnership or sold his interest in the MARQUES to Litchfield prior to April, 1983, his continued contacts with and conduct on behalf of the MARQUES suggest that the business relationship between Litchfield and Cecil–Wright involving the MARQUES had not ceased to exist. Cecil–Wright incorrectly assumes that the Litchfield/Cecil–Wright partnership existed only

while both parties shared direct legal ownership of the vessel. Under Rhode Island law, a partnership need not involve ownership of partnership property. The determining factor is whether two or more persons associate and share profits from a business. R.I.Gen.Laws §§ 7–12–17, 7–12–18(4). The continuation of a business by partners presents prima facie evidence that a partnership still exists. *Id.* at § 7–12–34(2). The law provides that:

> When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without an express agreement, the rights and duties of the partners remain the same as they were at termination, so far as is consistent with a partnership at will.

*Id.* at § 7–12–34(1). Finally, even after dissolution, a partnership will continue until the winding up. *Id.* at § 7–12–41.

Under Rhode Island law, therefore, neither the transfer of the S/V MARQUES to Litchfield by Cecil–Wright, nor Cecil–Wright's notice of termination, is determinative of whether the partnership between them continued to exist. Plaintiffs have presented evidence which raises the real possibility that a de facto partnership arose. In Cecil–Wright's deposition, taken after the MARQUES sinking, he stated that he continued to be the Chairman of China Clipper. He also stated that just two months prior to the sinking, he traveled to Antiqua and Tortola to gather business for the MARQUES. Further, the Tall Ships Race registration listed Cecil–Wright as the co-owner of the MARQUES. These facts not only suggest a partnership with Litchfield in China Clipper after April 1983, but reveal the extent of Cecil–Wright's primary participation in the MARQUES enterprise. The inference is strong that Cecil–Wright retained an ownership interest in the MARQUES at that time.

Further, plaintiffs' complaint and the exhibits supporting their memoranda suggest that a sufficient agency relationship continued to exist to cause imputation of Litchfield's contacts to Cecil–Wright. Plaintiffs' complaint alleges that "each defendant acted individually and as principal agent or co-venturer with each other defendant. (¶ 10). The defendants, at all times material hereto, participated in the operation, control and itinerary of the S/V MARQUES." (¶ 11). If Litchfield and Cecil–Wright were involved in a joint enterprise, also known as a joint venture, any acts performed or contacts made while acting in furtherance of the joint venture would be imputed each to the other. *See Walsh v. Israel Couture Post, No. 2274 V.F.W.*, 542 A.2d 1094, 1096 (R.I.1988).

The Supreme Court of Rhode Island has defined a joint venture as "an undertaking by two or more persons jointly to carry out a single business enterprise for profit." *Fireman's Fund Ins. Co. v. E.W. Burman, Inc.*, 120 R.I. 841, 844, 391 A.2d 99, 101 (1978). As with partnerships, a mutual agency exists among joint venturers. *See id.; See also Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151, 1153 n. 1 (1980); *See also* R.I.Gen.Laws § 7–12–20. The continuous and systematic conduct of one joint venturer may be imputed to his or her cohorts for jurisdictional purposes. *Itel, supra,* 116 F.R.D. at 479–80; *see McAleer I, supra,* 715 F.Supp. at 1158 (discussing jurisdiction over Litchfield).

Accepting plaintiffs' allegations as true, they have made out a prima facie case for jurisdiction by presenting facts from which this Court could find a joint venture. Litchfield and Cecil–Wright originally joined forces to promote the MARQUES as a business. Their relationship relative to the MARQUES was a commercial enterprise. As mentioned previously, Cecil–Wright continued in his role as Chairman of China Clipper even after the vessel sank. Litchfield listed Cecil–Wright as co-owner of the MARQUES on the race registration form. Immediately after the vessel sank, Litchfield attempted to notify Cecil–Wright of the disaster. Sometime thereafter Cecil–Wright admitted his partial responsibility for sending the MARQUES to sea in an unseaworthy condition. The evidence indicates that until the time of the sinking, Litchfield and Cecil–Wright continued to

operate the MARQUES as a business and continued to treat each other as business associates. Assuming that a joint venture existed, this Court can impute Litchfield's jurisdictional contacts to Cecil–Wright.

■ Cecil–Wright's argument that he did not constitute a "primary participant" in the enterprise as required by *Burger King Corp. v. Rudzewicz, supra,* is without merit. The *Burger King* court used that language to point out that an agent's *one-time* contact with a state may not constitute sufficient minimum contacts to allow a court to exert personal jurisdiction over an out-of-state principal. *Id.* at 479 n. 22 (emphasis added). The Court cautioned that courts must evaluate the extent of the contacts between the in-state and the out-of-state parties, including the "prior negotiations and contemplated future consequences ... the terms of the contract, and the parties' actual course of dealing." *Id.* 471 U.S. at 479, 105 S.Ct. at 2183. Unlike in *Burger King,* this case involves more than an isolated association between the out-of-state principals and the in-state agent. Neither party disputes that ASTA maintained continuous and systematic contacts with Rhode Island. As discussed in this Court's prior decision, "ASTA's continuous and systematic operations in Rhode Island during the lifetime of the sail training contract can arguably be imputed to Litchfield under principles of agency law. *Lawrence v. Anheuser–Busch, Inc.,* 523 A.2d 864, 867 (R.I.1987). If such an agency arrangement exists, ASTA's contacts in Rhode Island then subject Litchfield to this forum's jurisdiction." *McAleer* I, *supra,* 715 F.Supp. at 1158. Because of Cecil–Wright's association with Litchfield and his participation in either a partnership or joint venture with Litchfield post-April 1983, any agency relationship that existed between ASTA and Litchfield would likewise be imputed to Cecil–Wright.

## Conclusion

This Court denies defendant's motion for reconsideration of its June 30, 1989 Memorandum and Order. By showing either a partnership or a joint venture between Litchfield and Cecil–Wright from and after April 1983, plaintiffs have established a prima facie case for personal jurisdiction over Cecil–Wright. Furthermore, the material submitted by Cecil–Wright has raised material questions of fact which must be determined by trial. *See Thompson Trading, supra,* 124 F.R.D. at 535–36 (when facts regarding jurisdiction are disputed, issue should proceed to trial).

*It is so Ordered.*